

WALTER M. COLLERAN (1912-1998)
RICHARD L. O'HARA
JOHN F. MILLS (1939-2003)
EDWARD J. GROARKE
CHRISTOPHER P. O'HARA
CAROL O'ROURKE PENNINGTON
DENIS A. ENGEL
JOHN S. GROARKE*
MICHAEL D. BOSSO

STEVEN C. FARKAS**
THOMAS P. KEANE***
DAMIEN O. MAREE**
PATRICIA L. BOLAND
SABRINA K. BEKIOS +
GLENN A. KREBS ++

PARALEGALS
LAURA A. HARRINGTON
KRISTINE M. MURPHY
LILLY PIAZZA
DAOMINE ZAMILUS

\* ALSO ADMITTED IN NEW JERSEY
\*\* ALSO ADMITTED IN WASHINGTON, D.C.
\*\*\* ALSO ADMITTED IN NEW JERSEY AND CONNECTICUT
\+ AWAITING ADMISSION
\+\+ OF COUNSEL

January 19, 2024

<u>**VIA ECF**</u>
Honorable Jennifer L. Rochon, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 20B
New York, New York 10007-1312

    Re:    *Theresa Milerson v. Metropolitan Transportation Authority et al*.
             **Case No. 1:22-cv-00688 (JLR)**

Dear Judge Rochon:

    This firm represents Plaintiff in the above-refenced matter. With consent of Defendants' counsel, for settlement purposes, we submit the settlement agreement ("Agreement") (Exhibit 1) resolving Fair Labor Standards Act ("FLSA") claims for Your Honor's review and approval.

    This case seeks damages for alleged untimely payment of overtime wages under the FLSA. On February 18, 2022, this Court entered an Order referring the captioned case to mediation. (Docket No. 15). The first mediation session was scheduled for March 25, 2022. Although mediation was not successful initially, the parties continued settlement discussions and the informal exchange of documents and other information pertinent to the case with the assistance of the mediator. Additional mediation sessions were held on November 10, 2022, February 8, 2023, May 16, 2023, July 12, 2023, September 19, and October 26, 2023. Ultimately, the mediation session held on October 26, 2023 resulted in an agreement in principle to settle, and the Court was so notified. For the reasons below, the settlement is fair and reasonable and should be approved.

    **<u>Background of the Action</u>**

    Plaintiff Theresa Milerson ("Milerson" or "Plaintiff") on behalf of herself and all others similarly situated, alleges that Defendants Metropolitan Transportation Authority ("MTA"), New York City Transit Authority ("NYCTA"), and Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA") (collectively, the "Defendants") violated the FLSA by failing to pay employees on the next regularly scheduled payday following the work performed. On December 11, 2021, it was publicly reported that Kronos, which provides timekeeping and attendance services for Defendants, notified its customers that it had been the victim of a ransomware attack which caused their services to become disabled for all customers for an extended and unknown length of time (the "Kronos Outage"). Defendants were unable to use the Kronos timekeeping and attendance system from December 4, 2022 through March 14, 2022 (the "Kronos Outage Period"). As a result of the Kronos Outage, Plaintiff alleges Defendants unlawfully withheld the earned overtime wages of its employees who were paid using the Kronos timekeeping and attendance system due to the Kronos Outage, prompting the within lawsuit on January 26, 2022 by Plaintiff individually and on behalf of

the employees set forth in Exhibit B to the Agreement. As of July 7, 2022, Defendants paid all outstanding overtime to the employees in the collective covered by this settlement agreement as set forth in Exhibit B to the Agreement. Therefore, at the time of settlement, the remaining relief sought in this matter was limited to liquidated damages and attorneys' fees and costs.

### Legal Standard

As the Court is aware, when FLSA claims are settled, the Court must review the proposed agreement to ensure fairness. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). While the Second Circuit's ruling in *Cheeks* did not outline the factors for approval of a settlement, certain red-flag issues were identified such as confidentiality, general and broad releases and counsel fees exceeding 40%. *Id.* at 206.

The within agreement contains no such red flags: (i) the release contained in the agreement is not overbroad for the collective[1]; (ii) there is no requirement for confidentiality; and (iii) attorneys' fees are capped at under 33%. At bar, the Agreement calls for Defendants to pay a settlement of $93,234.84, of which $62,734.84 will be paid to Plaintiff and the 158 putative collective members. The settlement falls within the range of reasonableness, considering the best possible recovery and the risks of litigation and collection, and therefore should be approved. Furthermore, the settlement was reached through arms-length negotiations between experienced counsel who are experienced in this field. In addition, this settlement was obtained through the aid of experienced mediator Usher Winslett, who serves on the S.D.N.Y. mediation panel.

### The Settlement is Objectively Fair, Adequate, and Reasonable

When considering whether a settlement is fair, the Court examines the following five factors: (1) "the plaintiff's range of possible recovery"; (2) "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;" (3) "the seriousness of the litigation risks faced by the parties"; (4) "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) "possibility of fraud or collusion." *Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2015). However, the principal question to resolve is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info Networking Computing USA, Inc.,* 2008 WL 724155 at *1 (E.D.N.Y. 2008) (*quoting Lynn's Food Stores v. United States,* 679 F. 2d 1350, 1354 (11th Cir. 1982). Of note, as part of the settlement, the parties have agreed to establish a collective of the individuals in Exhibit B to the Agreement, without the need for motion practice. (*See* Exhibit 1).

Regarding the first *Wolinsky* factor, pursuant to the terms of the Parties' Settlement Agreement, Defendants are paying the total sum of $93,234.84, of which $62,734.84 will be paid to Plaintiff and the 158 putative collective members. All the unpaid overtime to the collective had been paid by the time the parties attended their first mediation session. Therefore, only liquidated damages are available to the Plaintiff and the collective. The parties calculated that if Plaintiff prevailed, the maximum recovery of liquidated damages for the collective was $179,242.41. Thus, the principal settlement amount of $62,734.84 represents approximately 32% of the total possible recovery and ensures that each member of the collective will receive money. This satisfies the second *Wolinsky*

---

[1] There is a broad release applicable to Ms. Milerson only, in consideration of her receipt of a service award. Service awards in exchange for a general release are routinely upheld in this District. See Bondi v. DeFalco, No. 17 Civ. 5681 (KMK), 2020 U.S. Dist. LEXIS 84701, at *16 (S.D.N.Y. May 13, 2020) (citing Corea v. Café Spice {GCT}, Inc., No. 18 Civ. 10354 (KMK), 2020 U.S. Dist. LEXIS 86426, at *14 (S.D.N.Y. Mar. 5, 2020)).

factor as the collective will be established through this settlement without the uncertainty of collective motion practice.

Furthermore, with regard to the third *Wolinsky* factor, a case filed after the instant matter in the Eastern District of New York alleges similar claims for a different proposed collective. *Greene v. Metropolitan Transportation Authority, et al,* 22-cv-03300 (JMA)(ST). However, that case is in the midst of motion practice which could endanger either the merits, or the collectability, of the within matter should settlement not proceed. The settlement of $93,234.82 represents a favorable result to Plaintiff in light of the burden of proof on Plaintiff and litigation risks faced by Plaintiff and Defendants. Because Plaintiff and the collective were paid their overdue overtime during the pendency of this action, the collective would need to overcome Defendants' good faith defense to the assessment of liquidated damages, which is particularly nuanced here because it was a third-party's service shutdown as the result of a cyber-attack that was at the root of the allegedly untimely payments. Given that the Court has discretion on whether to assess liquidated damages in FLSA cases, this settlement provides all these affected employees with a certain recovery – on top of having already received their owed overtime wages. For Plaintiff Milerson individually, she could have gone through to trial and obtained a judgment for less than she will receive under the Agreement, could have lost, or could have faced post-trial motions and appeals. This settlement is also favorable from Defendants' perspective, who deny liability. However, Defendants understand the risks inherent in proceeding through the collective action process and further litigation in terms of potentially higher liquidated damages, prejudgment interest, and increased costs and attorneys' fees. In light of the foregoing legal risks, Plaintiff has accepted the settlement, which is a fair compromise after reviewing the facts and circumstances of this matter.

The settlement also meets the fourth and fifth *Wolinsky* factors – whether it is the product of arm's-length bargaining between experienced counsel and whether there was any possibility of fraud or collusion. Courts typically regard the adversarial nature of a ligated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, 2013 WL 1364147 at *4 (S.D.N.Y. 2013). Here, this settlement was achieved after extensive settlement negotiations – and 7 mediation sessions – between Plaintiff's counsel and Defendants' counsel with the intervention of a mediator. Both sides' area of practice focuses on employment litigation, with Plaintiff's lead counsel having nearly 14 years' experience in this area. Plaintiff Milerson fully participated in each mediation session as presided over by a very experienced mediator from the Court's ADR Department. The mediation process itself consisted of a hard-fought process consisting of seven (7) total sessions. These facts indicate that the negotiating process was at arm's length and there has been no fraud or collusion in the process.

### **The Costs and Attorneys' Fees are Fair and Reasonable**

Finally, the proposed settlement also covers the Plaintiff's costs and attorneys' fees. Plaintiff can recover attorneys' fees as of right as a prevailing party pursuant to the FLSA. See, e.g., 29 U.S.C. § 216(b); *see also Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008); *Kahlil v. Original Old Homestead Restaurant, Inc.*, 657 F.Supp.2d 470, 473 (S.D.N.Y. 2009) ("The Court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added) (citations omitted)). A party is considered a prevailing party "if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Kahlil*, 657 F.Supp.2d at 473. It is not required that the plaintiff be successful on all claims; he/she must merely "demonstrate a change in the legal relationship between himself and the defendant arising from the resolution of the lawsuit." *Id*. The fact that Plaintiff prevailed via

settlement and not litigation is immaterial. *Id*. Thus, as the prevailing party, Plaintiff is entitled to an award of attorneys' fees and reasonable costs as a matter of right. *Id*.

In the context of settling FLSA claims, courts should refrain from "disapprov[ing] a settlement on the amount of attorney's fees, since both parties assumingly ha[d] knowledge of how attorney's fees are calculated in this district and were negotiating at arm's length." *Wolinsky*, *supra*, at 335-36. When determining reasonable attorneys' fees, the Second Circuit has cautioned District courts not to limit attorneys' fees based on a "maximum percentage" of fees and have "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation. *Fisher v. SD Protec. Inc*., 948 F.3d 593, 602 (2d Cir. 2020). The Second Circuit went on to say that "there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." *Id.* at 603.

Here, however, the attorneys' fees are less than 33% of the total settlement, which percentage is routinely approved for FLSA settlements. *Calle v. Elite Speciality Coatings, Inc.* 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (same). Plaintiff's counsel also incurred costs totalling $591.21.[2] Of note, the $30,000 attorneys' fees are inclusive of these costs, and we are not seeking additional recovery thereon. Accordingly, the fees portion of the settlement agreement is not a separate fee application. Any change to the agreed-upon fee would be "rewriting" the settlement agreement, which would be an abuse of discretion pursuant to the Second Circuit. *Fisher* at 602.

The work in this case consisted of investigating the case, drafting a complaint, pre-mediation discovery and representing Plaintiff at the seven (7) mediation sessions as well as negotiations on the text of the settlement agreement. For the foregoing reasons, the agreed upon amount of $30,000 for attorneys' fees, representing less than 33.3% of the total settlement, is fair and reasonable and should be approved.

### **The Parties Request that the Court Approve the Settlement**

For the reasons above, the proposed settlement is fair to Plaintiff, reasonably resolves bona fide disagreements between Plaintiff and Defendants about the merits of the claims to damages, and demonstrates a good faith intention by the parties that their claims for liability and damages be fully and finally resolved and not relitigated in the future by agreeing upon a collective.

For the reasons outlined above, the settlement reached in this matter is fair and reasonable to all parties. If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *See Johnson v. Brenan,* 2011 WL 4357376, at *12 (S.D.N.Y., Sept. 16, 2011).

Accordingly, we respectfully request that the Court approve the Agreement.

Respectfully submitted,

 /s/Patricia L. Boland 
Patricia L. Boland

cc: All parties of record (*via* ECF)
4883-1548-9692, v. 5

---

[2] This includes $402.00 for the filing fee, $134.12 for legal research, $29.29 for UPS/mailings, and $25.80 for PACER download fees.